The SPRINGS COTTON MILLS,
Plaintiff,

v.

MACHINECRAFT, Inc., Defendant.

Civ. A. No. 1726.

United States District Court
W. D. South Carolina,
Rock Hill Division.
Oct. 26, 1957.

Williams & Parler, A. Z. F. Wood, Lancaster, S. C., for plaintiff.

Wyche, Burgess & Wyche, Greenville, S. C., for defendant.

WILLIAMS, District Judge.

This matter is before the Court upon defendant's motion to quash as insufficient service of the summons and complaint upon the Secretary of State of South Carolina on February 24, 1955, as alleged statutory agent of the defendant, and to dismiss the action for want of jurisdiction of the defendant. It presents for decision the question of whether under the facts defendant is to be regarded as doing business in South Carolina on February 24, 1955 and, therefore, present in this state at that time so as to be subject to service and suit therein.

Plaintiff, Springs Cotton Mills, is a corporation organized under the laws of the State of South Carolina, with its principal office in Lancaster County, and is engaged primarily in the business of manufacturing, processing and selling cotton goods. Defendant, Machinecraft, Inc., is a Massachusetts corporation with its offices and manufacturing plant in Whitman, Massachusetts, where it is engaged in the manufacture of Climax rolls, formerly used by the plaintiff in its manufacturing process.

Plaintiff instituted this action against defendant in the Court of Common Pleas of Lancaster County, South Carolina, by service on the Secretary of State on February 24, 1955. On March 10, 1955, the case was removed to this court and thereafter on March 15, 1955, defendant filed its motion to have the service of the summons and complaint set aside upon the following grounds:

"(1) That the defendant, Machinecraft, Inc., is a corporation organized, created and existing under and by virtue of the laws of the State of Massachusetts and is a for-

eign corporation to the State of South Carolina.

"(2) That the defendant, Machinecraft, Inc., is not now, nor was it at the time of the attempted service of the summons and complaint, nor was it at the times referred to in the complaint, doing business in the State of South Carolina so as to make it amenable to the jurisdiction of the State or Federal Courts in the State of South Carolina.

"(3) That the attempted service of the summons and complaint upon the defendant, Machinecraft, Inc., under Section 10–424 of the Code of Laws of South Carolina for 1952, is invalid."

Service on the defendant through the described means was sought to be made under Title 10, Section 424, Code of Laws of South Carolina for 1952, which reads as follows:

"10–424. Service on foreign corporations generally.

"If the suit be against a foreign corporation other than a foreign insurance company the summons and any other legal paper may be served by delivering a copy to any officer, agent or employee of the corporation found at the place within this State designated by the stipulation or declaration filed by the corporation pursuant to § 12–721. But if such foreign corporation transacts business in this State without complying with said section such service may be made by leaving a copy of the paper with a fee of one dollar in the hands of the Secretary of State or in his office and such service shall be deemed sufficient service and shall have like force and effect in all respects as service upon citizens of this state found within the limits of the same if notice of such service and a copy of the paper served are forthwith sent by registered mail by the plaintiff to the defendant foreign corporation and the defendant's return receipt and the plaintiff's affidavit of compliance therewith are filed in the cause and submitted to the court from which such process or other paper issued.

"Such service may also be made by delivery of a copy thereof to any such corporation outside the State and proof of such delivery may be made by the affidavit of the person delivering the same. Such affidavit shall be filed in the cause and submitted to the court from which the process or other paper issued."

The gravamen of the complaint is that between February, 1948 and January, 1952, plaintiff purchased certain ball-bearing Climax rolls manufactured by the defendant, at a cost of $109,539.84, that said rolls proved unusable, and that plaintiff was entitled to judgment for the purchase price.

Prior to the year 1953, defendant sold its products in this state through a partnership known as Watson & Desmond, composed of C. E. Watson and S. P. B. Desmond, both of Charlotte, Mecklenburg County, North Carolina. The partnership maintained its offices in Charlotte, North Carolina and is what is known as a manufacturer's representative, selling products of the defendant as well as products of other manufacturing companies in this territory. This partnership operated under a written sales agreement with the defendant corporation dated April 1, 1947, which provided among other things that Watson & Desmond should have all rights as to the direction of its sales efforts and itineraries of calls in promoting the sale of the rolls and that the manufacturer should have the final right of acceptance or refusal of a purchase order; that if inquiries for rolls came to the manufacturer through sources other than Watson & Desmond, the latter would be notified of such inquiries, that the representative should receive a commission on the sales price of all rolls sold in the territory, either by the partnership or as a result of inquiries made to the manufacturer.

The method by which Watson & Desmond handled sales of the defendant may be summarized as follows: The manufacturer would from time to time issue a quotation to the representative listing the then prevailing price of its Climax rolls. This price was changed from time to time by the manufacturer, such changes being submitted to Watson & Desmond by amended quotations. Sales of Climax rolls were solicited from textile mills, including the plaintiff, by Watson & Desmond and their employees in the name of Watson & Desmond. The purchasing mills issued their purchase orders for said rolls in practically all instances directing the purchase order to Watson & Desmond, Charlotte, North Carolina, but in a few instances directing them to Machinecraft, Inc., c/o Watson & Desmond, Charlotte, North Carolina. There is no evidence that any purchases were made directly from salesmen in the territory or directly by mail to the manufacturer's Whitman, Massachusetts, office.

Upon receipt in Charlotte, North Carolina, of the purchase order from the mill, Watson & Desmond then placed its own covering order on its own form with Machinecraft, Inc., and submitted the same to the defendant corporation at Whitman, Massachusetts, through the United States mails. Upon approval of said order from the representative, Machinecraft sent the cotton mill an acknowledgment of the order through the mails with a copy by mail to Watson & Desmond.

Thereupon, Machinecraft issued a shop order in six counterparts and delivery of the rolls was made in accordance with the purchase order of Watson & Desmond. In most instances, the representative's purchase orders specified that the shipment was to be made and invoices sent to the cotton mill. In accordance with said directions, invoices were sent by Machinecraft through the mail to the cotton mill, with copy by mail to the representative. Upon receipt of payment of said invoices which were received by mail, Machinecraft paid the representative the commission to which it was entitled under the written contract.

The services of Watson & Desmond under the contract of 1947 did not prove satisfactory to the defendant and it was not renewed after the expiration of the five-year period set forth therein.

Although Machinecraft had some of its employees connected with or associated with Watson & Desmond at certain times, there is no evidence in the record that any of these employees were in the State of South Carolina on any business of Machinecraft subsequent to 1952, with the exception of Louis M. Cotchett, President of the defendant corporation, who made one visit to South Carolina in 1953 to try to make an adjustment of the complaint of Springs Cotton Mills.

Machinecraft had no office or place of business anywhere in the State of South Carolina. It has never maintained any address, bank account or stock of goods in this state.

Machinecraft entered into a written contract with Product Sales, Inc., for the sale of its Climax rolls and other manufactured products in the territory formerly handled by Watson & Desmond. This contract is dated September 1, 1951. Some time was required in completing this change of representation. The evidence shows that Springs Cotton Mills and other purchasers of defendant's products were notified that after March 1, 1953, Watson & Desmond would no longer be its sales representative in this territory. Thereafter, defendant's products were handled exclusively by Product Sales, Inc.

The procedure followed by Product Sales, Inc., in consummating sales is quite similar to that followed by Watson & Desmond. It may be described briefly as follows: Orders for said products are solicited by the agents and employees of Product Sales, Inc., from various cotton mills located in South Carolina and other states. Orders for such articles sold are placed directly by said cotton mills variously with the various manufacturers through the United States mail. Upon

receipt of said orders, specifications are prepared by Machinecraft, Inc., or other manufacturers to cover the articles specified in the mill's order. Shop orders are thereupon made up in a number of copies, one of which copies designated "Sales" is sent by the manufacturer to Product Sales, Inc., to serve as an acknowledgment to Product Sales, Inc., of the order received from the mill. Product Sales, Inc., thereupon prepares a separate acknowledgment and confirming quotation to the cotton mill which is sent from its place of business in Massachusetts to the particular mill placing the order through the United States mail. That shipment is made direct by manufacturer to the customer in accordance with the shop order, said shipment being by air, motor or rail freight.

Product Sales, Inc., is a Massachusetts corporation. It has a place of business in Greenville, South Carolina and has agents and employees in this state. There is no evidence in the record that Machinecraft had any right to direct, supervise or control the activities of the employees of Product Sales, Inc., in South Carolina. In addition to articles manufactured by Machinecraft, Product Sales, Inc., also acts as commission representative for products manufactured by other concerns. It also sells products of its own manufacture.

The written contract between Machinecraft and Product Sales specifies that the latter corporation shall be responsible for installation where necessary on the premises of the customer of machinery and equipment manufactured by Machinecraft. It will be noted, however, that in the sale of machinery and equipment to Springs and other purchasers, Machinecraft assumed no obligation for installation. Defendant in this respect was not employing or contracting with another party to discharge an obligation which it had assumed to the customer. Product Sales, Inc., was also required to inspect and service the machinery and equipment on the premises of customers and to educate employees of customers in the best use and proper care of said machinery and equipment. This duty was not one which Machinecraft had contracted with Springs or its other customers to perform. Therefore, in making such an agreement with Product Sales, Inc., it was not contracting with another to perform a duty or obligation which it owed to the customer.

■ It is elementary that for a court to entertain an action *in personam* against a foreign corporation, jurisdiction over the person of that defendant must be acquired by legal process constitutionally exercised. The acquisition of this jurisdiction comprises two elements: (1) The power to subject it to the jurisdiction of the Court and (2) effectively bringing it before the court by proper process. Pennoyer v. Neff, 95 U. S. 714, 24 L.Ed. 565; Erlanger Mills, Inc., v. Cohoes Fibre Mills, Inc., 4 Cir., 1956, 239 F.2d 502.

■■ In order to subject a foreign corporation to state jurisdiction, constitutional due process requires the corporation to be "present" within the state by doing business therein, unless it has consented to jurisdiction either explicitly (such as the appointment of a statutory agent to accept service) or impliedly (as by general appearance). International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 158, 90 L.Ed. 95. The test laid down in the International Shoe Co. case is that the defendant must maintain "certain minimum contacts" with the state of the forum, such that the "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" "Presence within the state" is a phrase used to symbolize the amount of the corporation's activities within the state which courts require in order to satisfy the constitutional guarantee of due process. Hutchinson v. Chase & Gilbert, Inc., 2 Cir., 1930, 45 F.2d 139.

■ It has often been stated that "in determining whether a foreign corporation is doing business within a state to such an extent as to make it amenable to state jurisdiction, the federal authorities

are controlling, because of the question of 'due process,' 'equal protection,' and 'interstate commerce involved.'" Hoffman v. D. Landreth Seed Co., 1951, 220 S.C. 193, 66 S.E.2d 813, 814.

■ It has also been held that after a case is removed from the state to the federal court, the nonresident defendant corporation has a legal right to the opinion of the federal court as to the validity of the service of process. Mechanical Appliance Co. v. Castleman, 215 U.S. 437, 30 S.Ct. 125, 54 L.Ed. 272.

The United States Supreme Court has been referred to as the "final arbiter" on this question of the validity of service of process, but the numerous decisions of the State of South Carolina Courts are generally in accord with those of the United States Supreme Court. State of South Carolina v. W. T. Rawleigh Co., 172 S.C. 415, 174 S.E. 385.

The United States Supreme Court in the International Shoe Co. case, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, emphasizes the fact that satisfaction of due process depends "upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." Mr. Chief Justice Stone, who wrote the opinion, goes on to point out that due process "does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties or relations."

The problem in this case, as in all other cases, is to determine from the facts whether or not the contacts between the foreign defendant and the forum state are of sufficient magnitude and continuity to warrant jurisdiction. Erlanger Mills, Inc., v. Cohoes Fibre Mills, Inc., supra, 239 F.2d 502.

I can find no case, either before or after the International Shoe Co. decision by our Supreme Court, which would justify jurisdiction of the present action on the minimal "contacts, ties or relations"

which the defendant has with the State of South Carolina.

The decision of the issue now before the Court resolves itself into a determination of whether or not Machinecraft was doing business in South Carolina through agents, servants or employees of Product Sales, Inc.

The facts of the International Shoe Co. case, supra, where the Supreme Court permitted the State of Washington to maintain an in personam action against the Shoe Company, are in no way analogous to those here presented. International Shoe Co. was engaged in the manufacture and interstate sale of shoes. It had no offices in the State of Washington and made no contracts or sales or purchases there, the sales not being final until accepted by the St. Louis office. But the company had as many as thirteen salesmen who resided in Washington and sold its products in that state exclusively. The salesmen solicited a large volume of business in Washington and their annual commissions were at times as high as $31,000. They did not sell products of any other concern. The Shoe Company had the right to supervise and direct their activities within the state. Its salesmen rented sample rooms in office buildings or hotels in Washington where the company's products were exhibited to customers. These brief facts demonstrate that the salesmen were employed by the nonresident corporate defendant shoe company and that they were under the "direction, supervision and control" of the sales managers and were employees of said company. It was the acts of International's employees at issue, whereas in the instant case, only the relationship of two concerns, Watson & Desmond and Product Sales, Inc., supplying their employees in South Carolina, is presently at issue. If no agency relationship existed between Product Sales, Inc., and the defendant on February 24, 1955, then due process forbids said defendant from being held amenable in South Carolina for the acts of Product Sales. See Pennoyer v. Neff, supra. Thus, although

the principles of the International Shoe case are fit guides, the facts are at such variance as to require a different conclusion.

In Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 492, the Supreme Court sustained the jurisdiction of the Ohio State Court over the nonresident defendant corporation because it held directors' meetings in Ohio, did its banking there and carried on other administrative functions in the state. Mr. Justice Burton, speaking for the Court, pointed out that the corporation was carrying on an essential part of its business within the state, continuously and systematically. This cannot be said of Machinecraft, Inc., in the case now before the Court.

■ The defendant entered into a contract with two dealers who, in addition to selling the defendant's products, sell products of many other concerns. If the correct relationship of the defendant and its selling dealers is analyzed, it is manifest that the role of the independent contractor is present. "An independent contractor may be distinguished from an agent in that he is a person who contracts with another to do something for him, but who is not controlled or subject to the control of the other in the performance of such contract, but only as to the result." Am.Jur., Agency, Sec. 8, p. 17. (Citations omitted.)

■ In Restatement of the Law of Agency, an independent contractor is defined as one "who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in performance of the undertaking." Restatement of the Law of Agency, Sec. 2(3). See also Sec. 220 wherein certain factors are laid out for the determination of agency or of an independent contractor.

■ Merely because the defendant has had business solicited for it by another does not bring the defendant within the orbit of "doing business" in that state. For example, consider the court's decision in Maisel v. Gdynia America Shipping Lines, Limited, D.C.W.D.N.Y.1937, 18 F.Supp. 727. The defendant was a foreign corporation and the plaintiff sought to base its service upon the domestic corporation bearing the same name as defendant. The domestic corporation solicited passenger and freight business for the foreign corporate defendant, which itself did no business in the state of service. The court set aside the service, basing the decision upon the weight of authority (see 18 F.Supp. 727, 728, for the cases cited), and closed its opinion with this quotation:

"* * * 'The jurisdiction taken of foreign corporations, in the absence of statutory requirement or express consent, does not rest upon a fiction of constructive presence, like *"qui facit per alium facit per se."* It flows from the fact that the corporation itself does business in the state or district in such a manner and to such an extent that its actual presence there is established.' Bank of America v. Whitney Bank, 261 U. S. 171, 43 S.Ct. 311, 312, 67 L.Ed. 594."

It appears from the record that plaintiff has instituted a suit against the defendant in the United States District Court for the District of Massachusetts for the same cause of action set forth in the complaint now before the Court. In view of the conclusion that the forum Court has not acquired jurisdiction over the defendant, it is not necessary to decide which action should abate.

■ For the foregoing reasons, it appears that the defendant has not maintained the necessary relations, contacts or ties with the State of South Carolina to justify the State Court's jurisdiction over it which was sought to be perfected by service upon the Secretary of State. It is, therefore,

Ordered that this case be dismissed for lack of jurisdiction of the defendant.