SUN–X GLASS TINTING OF MID–WISCONSIN, INC., a Wisconsin Corporation, et al., Plaintiffs,

v.

SUN–X INTERNATIONAL, INC., formerly American Glass Tinting Corp., a Texas Corporation, and E. I. Du Pont De Nemours and Company, Inc., a Delaware Corporation, Defendants.

Civ. A. No. 3561.

United States District Court
W. D. Wisconsin.
March 16, 1964.

John J. Walsh, Madison, Wis., for plaintiffs.

Quarles, Herriott & Clemons, Milwaukee, Wis., and Stroud, Stebbins & Stroud, Madison, Wis., for defendants.

RABINOVITZ, District Judge.

Defendant Sun-X International, Inc., formerly American Glass Tinting Corp., a Texas corporation (hereinafter referred to as "AGT") moved to dismiss the complaint or in lieu thereof to quash the return of service made on it on the ground that AGT is not doing business in Wisconsin. AGT and Du Pont further alleged improper joinder of parties plaintiff.

This is a diversity action originally commenced in the Circuit Court of Dane County, Wisconsin, and removed by defendants.

There are eight plaintiffs to this action. Four are residents of Wisconsin; and the remaining four reside respectively in Iowa, Kentucky, Minnesota and Kansas.

Defendant AGT was served by a deputy sheriff at its home office in Houston, Texas.

The parties have filed detailed interrogatories and facts from which the statement of facts is taken. AGT spent $500 in 1960, $900 in 1961, and $450 in 1962 in Wisconsin by way of advertising to procure distributor-dealers for the glass tinting product which it distributes nationally. Between the years 1959 and

1962, AGT spent a total sum of $62,000 for national magazine advertising, some of which it assumed was read in Wisconsin. In fact, from the answers to defendant's interrogatories, two of the Wisconsin plaintiffs first came to know of AGT through its advertising. A friend referred another plaintiff to the AGT representative then in Wisconsin.

AGT spent the following man days in Wisconsin, by its agents, for the purpose of procuring dealers: 1960—55; 1961—71; 1962—22. Its expenses during those periods were: 1960—$1,100; 1961—$1,400; and 1962—$450.

With respect to the four Wisconsin plaintiffs, AGT spent up to 5 days in Wisconsin for each plaintiff, and up to $100 in costs (exclusive of transportation) all for the purpose of procuring contracts with each of the Wisconsin plaintiffs.

Defendant AGT advised and counseled its distributor-dealers by mail and by telephone. It sent manuals and bulletins to them. Between August 1960, and March or April 1961, it occasionally sent field representatives into Wisconsin to personally call on dealers and consult with them. AGT estimates that about 12 such calls were made.

AGT devoted 31 days in 1960 to training its Wisconsin dealers; in 1962 it devoted 10 days in Wisconsin to such training.

The total initial purchase monies received was $51,300.00.

The number of gallons of plastic Sun-X shipped to Wisconsin was:

| | Initial order | Subsequent order | Total |
|------|---------------|------------------|-------|
| 1958 | 0 | 0 | 0 |
| 1959 | 0 | 0 | 0 |
| 1960 | 151 | 253 | 404 |
| 1961 | 0 | 119 | 119 |
| 1962 | 54 | 20 | 74 |

Total sales were as follows:

| | Initial order | Subsequent order | Total |
|------|---------------|------------------|-------|
| 1958 | 0 | 0 | 0 |
| 1959 | 0 | 0 | 0 |
| 1960 | $41,320.17 | $13,335.27 | $54,655.44 |
| 1961 | $ 4,993.63 | $ 6,679.80 | $11,673.43 |
| 1962 | $ 4,993.63 | $ 932.43 | $ 5,926.06 |

During the periods of negotiations with the various plaintiffs, officers of AGT came to Wisconsin for the purpose of securing distributor-dealer contracts. Among others was the sales manager, vice-president, his secretary, and a field representative. All of this was in addition to correspondence, telephone calls and literature mailed or given to the plaintiffs. The agreements provided that they were not to become effective until signed by the president or vice-president of defendant. It is not explicit where the contracts were signed by the various defendants. It would, however, be a fair inference that the plaintiffs executed their contracts in their own states.

It should be noted that a similar practice of having officers of AGT personally negotiate with the plaintiffs was followed in Kansas, Minnesota and Kentucky. In the last two states the president of AGT participated in the negotiations.

Defendant AGT raises three principal issues. The first is whether or not AGT is subject to the jurisdiction of the Wisconsin process statutes on the ground that it was doing business in Wisconsin. The second issue is, that if AGT is found to have been doing business in Wisconsin, is it subject to process by the nonresident plaintiffs? The third issue is

whether there has been a proper joinder of parties plaintiff.

## DOING BUSINESS IN WISCONSIN

The Federal Rules of Civil Procedure, Rule 4(e) provides, so far as material:

"Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state, * * * service may in either case be made under the circumstances and in the manner prescribed in the statute or rule."

Jurisdiction over AGT was obtained by plaintiffs under section 262.09(4), Wisconsin Statutes (1957). It is suggested by defendant AGT that as to plaintiff, Sun-X Glass Tinting of Milwaukee, Section 262.05, Wisconsin Statutes (1959), would apply, since the latter statute is applicable to actions arising after July 1, 1960. The contract with the above named plaintiff was executed May 5, 1961. At the outset, the court finds that no material distinction exists in respect to the question presented here. Both statutes provide for service outside of the state. Both statutes appear to follow the same "doing business test," although the respective statutes frame the test differently.

 Upon removal the defendant is not precluded from raising defenses available to it had the cause not been removed. A non-resident defendant corporation has a legal right to the opinion of the federal court as to the validity of the service of process. Springs Cotton Mills v. Machinecraft, Inc., 156 F. Supp. 372 (W.D.S.C.1957).

 In a diversity action the district court applies the law of the state in which it holds court. The question of doing business in a state is one of state law. Green v. Robertshaw-Fulton Controls Company, 204 F.Supp. 117 (S. D.Ind.1962).

In State ex rel. Consolidated Textile Corp. v. Gregory, 209 Wis. 476, 245 N.W. 194 (1932), the court held that "A foreign corporation is present in this state when an officer thereof, vested with authority, is here transacting business for it." In that case, the corporate president was served in Wisconsin while he was here in respect to the business affairs of the corporation. He was discussing and negotiating for the delay of entry of default judgment on the firm's bonds in a New York action. This was his sole purpose in coming to Wisconsin. The corporation did no business in this state and had no officer or property here. The decision was reversed by the United States Supreme Court, 289 U.S. 85, 53 S.Ct. 529, 77 L.Ed. 1047 (1932), wherein the court held:

"In order to hold a foreign corporation not licensed to do business in a state, responsible under the process of a local court, the record must disclose that it was carrying on business there at the time of the attempted service."

"The general rule deducible from all our decisions is that the business must be of such nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdiction, and is by its duly authorized officers and agents present within the state or district where service is attempted." Consolidated Textile Corp. v. Gregory, 289 U.S. 85, 88, 53 S.Ct. 529, 77 L.Ed. 1047 (1932).

Under the facts in the case at bar, and from a consideration of the cases which follow, it can be seen that a finding that AGT was doing business in Wisconsin as respects the Wisconsin plaintiffs is not inconsistent with the Gregory case.

In Huck v. Chicago, St. P., M. & O. R. Co., 4 Wis.2d 132, 90 N.W.2d 154 (1958), the court held that solicitation of business was doing business in this state under section 262.09(4) (old). The interpleaded defendant, Rock Island Railroad, had no tracks in Wisconsin. It had maintained an office with telephone service in Milwaukee for 30 years. It had three agents soliciting freight and passenger

service. The court said that Rock Island's extensive activities in Wisconsin constituted the carrying on of business in the state.

In Huck the court undertook a discussion of the policy underlying section 262.-09(4) (old) and the scope of the statute consistent with due process.

The court held that "This court is disposed to give statutes regulating procedure a liberal interpretation. * * *" Further, the court held that:

"We have no hesitancy in holding that the objective of the statute was to give citizens of Wisconsin the right to make use of the courts of this state in instituting causes of action against any foreign corporation, which actually is carrying on business activities within the state, subject only to such limitations as are imposed by the United States constitution."

The court cited International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), setting further the following from that case:

"Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no *contacts, ties,* or *relations.*" (Emphasis added)

The Wisconsin court stated that International Shoe abrogated the old rule that mere solicitation of business by a foreign corporation was always insufficient to enable the state by appropriate statutes to subject such corporation to the jurisdiction of the courts of the state.

In Huck, 4 Wis.2d at page 139, 90 N.W. 2d at page 159, the court held that it was immaterial to its decision whether the defendant extended its activities beyond mere solicitation. On the following page, the court then adopted the "minimal contacts" test enunciated by the United States Supreme Court in International Shoe:

"The court held that the test of jurisdiction did not depend upon drawing a line between solicitation and other activities but rather whether the foreign corporation had such minimal contacts with the state as would not offend the concepts of due process if the courts of the state subjected such corporation to their jurisdiction."

It is clear that the Wisconsin court adopted the expanded concept of doing business for the purpose of jurisdiction before the revised Chapter 262 was to become effective.

■ Valid service of process plus the existence of minimal contacts initially satisfy the requirements of due process in maintaining an action in the courts of Wisconsin. Lau v. Chicago & N. W. R. Co., 14 Wis.2d 329, 111 N.W.2d 158 (1961). The Lau case affirmed the rule in Huck that solicitation of business is doing business within the meaning of section 262.09(4) (old). In Lau the foreign corporation conducted no business in this state except to solicit business, for which it maintained an office with four employees.

Holiday on Ice Shows, Inc. v. Dancing Waters, Inc., 155 F.Supp. 763 (W.D.Wis. 1957), by Judge Stone, may be distinguished. In that case, this court held that the defendant New York corporation was not doing business in this state because it agreed, in Illinois, to leave certain equipment to plaintiff, where the agreement provided that the Lessee assemble the equipment in Wisconsin, under the direction of defendant's employee, and where the machine was operated by one of defendant's mechanics. The court noted that no officer, agent or director of defendant was in Wisconsin. In the case at bar, various officers or managerial personnel from AGT came into Wisconsin for the purpose of negotiating and entering into certain business contracts. The mechanic in Holiday had no such

power or authority. For the case at bar, it is sufficient to state that the authority and power of the representatives of AGT, and their purpose in coming to Wisconsin, adequately differentiates this case from Holiday.

In American Type Founders Co. v. Mueller Color Plate Co., 171 F.Supp. 249 (E.D.Wis.1959), the court held that the foreign corporation was doing business in Wisconsin. The facts were that Elmora Corporation, formerly known as American Type Founders, Inc., agreed to sell Mueller certain equipment, f. o. b. New York and New Jersey. The contract was in part solicited in Wisconsin. American Type furnished plans and supervisory services of one erection mechanic to install the equipment in Wisconsin, a phototechnician for two weeks to instruct personnel in the operation of the equipment, and three employees to perform work on the equipment. American Type took a conditional sales contract and filed it in the Office of the Register of Deeds, Milwaukee, Wisconsin. The corporation at the time of these activities was licensed to do business in Wisconsin. The court held that under the present concepts a defendant who has conducted such activities should be amenable to process within the state.

Cases have been cited which tend to show that AGT did not have enough contacts in Wisconsin to be considered "doing business" in this state. The crucial distinction here is that in those states from which the cases were decided, the test or concept of doing business is different—more stringent—than the rule as announced by Wisconsin.

In Koepp v. Peters, 193 F.Supp. 296 (E.D.Wis.1961), the court held that in Wisconsin the concept of "doing business" is coextensive with the limits of the due process clause of the federal Constitution, citing Huck and American Type Founders.

Defendants placed great reliance on Trippe Manufacturing Company v. Spencer Gifts, Inc., 270 F.2d 821 (7th Cir. 1959), wherein the court based its decision on Grobark v. Addo Machine Co., Inc., 16 Ill.2d 426, 158 N.E.2d 73 (1959). In Grobark the action was for breach of an exclusive distributorship contract. Plaintiff served defendant in New York City. The order quashing service on defendant was affirmed by both Illinois appellate courts. Plaintiff bought machines worth $150,000 at retail from defendant. Defendant did not have an office, agent or property in Illinois. The parties had negotiated the contract in Illinois, where the alleged breach also occurred. The Illinois Supreme Court held that defendant's contacts with Illinois were insufficient for assuming jurisdiction.

However, in Wisconsin Metal & Chemical Corp. v. DeZurik Corporation, 222 F.Supp. 119 (E.D.Wis.1963), Chief Judge Tehan held that the former requirement of doing business is preserved under section 262.05(1) (d) (new). He followed the dissent in the Grobark case, which held:

"Although the instant case can be distinguished on its facts, we are constrained to agree with the dissenting opinion of Justice Davis in which he says: ' * * * (A)s I read the opinion in the case at bar, I cannot but believe that this court is again dealing with the early historic legalistic definition of "doing business" rather than with the concept of "minimal contacts" established in International Shoe and McGee [McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L. Ed.2d 223].' "

The facts in Wisconsin Metal were that the plaintiff through its agent ordered from defendant, through its agent, valves to be furnished by defendant and shipped to plaintiff in Wisconsin. Defendant was a Minnesota corporation, with its offices and manufacturing plant there. It had no property, telephone or advertising in Wisconsin. Its only contact with Wisconsin was through its agent Jack Dorner, d/b/a The Dorner Company. Dorner could only solicit orders for defendant. It had no authority to sell defendant's products. The court held that the service of process in Minnesota was valid and the

Wisconsin statute, section 262.05(5) (new) as applied did not violate the due process clause of the constitution.

In Kappus v. Western Hills Oil, Inc., 24 F.R.D. 123 (E.D.Wis.1959), the court held that the solicitation and sale of a security in Wisconsin to a Wisconsin resident constitutes doing business in Wisconsin. It was sufficient for purposes of the Fourteenth Amendment that the action against Western is based on a contract which had substantial connection with this state.

■ It is evident that AGT is amenable to process. The foregoing cases require a finding that AGT was doing business in Wisconsin as respects the Wisconsin plaintiffs. Not only did AGT by its officers solicit business in this state, but it *actually obtained that which it* sought. The facts are surely stronger in the case at bar than in Wisconsin Metal for holding that jurisdiction exists. In the case at bar, the defendant was represented by its own officers; in Wisconsin Metal defendant had its soliciting done by what appears to be an independent contractor.

AGT's activities indicate a concerted effort to set up a marketing system in Wisconsin, and elsewhere, for its product. Numerous trips to this state, the expenditure of money here in the course of its solicitation, plus the actual establishment of dealer-distributors and the sale of its product in this state, satisfactorily indicates that the defendant engaged in acts by which it purposefully availed itself of the privilege of doing business within this state, thus invoking the benefits and protection of its laws. The defendant has at least the required minimal contacts with Wisconsin.

## NON-RESIDENT PLAINTIFFS

■ With respect to the four non-resident plaintiffs, there arises the question of whether the fact that AGT was doing business in Wisconsin in relation to the four Wisconsin plaintiffs will be sufficient to justify and establish jurisdiction over AGT by the non-resident plaintiffs. The court is of the opinion that jurisdiction is lacking.

The Lau case, when read in light of the Huck case, may be distinguished from the case at bar. Huck and Lau both involved Wisconsin plaintiffs—residents of the forum. In this case, four of the plaintiffs do not reside in the forum. Further, injury was *sustained* in the forum state, notwithstanding the fact that the cause of the injury occurred or happened elsewhere. It was upon such a state of facts that the Wisconsin court in Lau held:

"Nevertheless appellant contends here that 'it would be a violation of federal due process for the Wisconsin courts to exercise jurisdiction over Missouri Pacific because the cause of action alleged did not arise out of its solicitation activity in Wisconsin.' Whatever favor might ever have been accorded that proposition, the law was settled to the contrary by Perkins v. Benquet Consol. Min. Co., 1952, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485. The court then held that the due process clause of the Fourteenth Amendment did not prohibit the state court from taking jurisdiction although defendant's activities in the state were in no way related to plaintiff's cause of action."

The *Perkins case did involve* a nonresident plaintiff and defendant. However, Perkins on this point, concerned the question of the right of a court to maintain jurisdiction *in personam*, not whether it must, which is a matter for the State court. Further, when Lau is read in connection with Huck, we find that Lau did expressly recognize that Rock Island's activities (in Huck) in Wisconsin were unconnected with the accident which produced the injuries complained of. Quite significant is what the court said in Huck, concerning section 262.09(4) (old):

"We have no hesitancy in holding that the objective of the statute was to give citizens of Wisconsin the right to make use of the courts

of this state in instituting causes of action against any foreign corporation, which actually is carrying on business activities within the state, subject only to such limitations as are imposed by the United States constitution."

It thus seems that, so far as Wisconsin is concerned, when the general language about expanding jurisdiction is read in light of the particular fact situations, the liberal disposition to find that jurisdiction exists has been for the purpose of giving Wisconsin residents a forum for the redress of their remedies.

The majority and concurring opinions in Lau clash on the matter of jurisdiction and *forum non conveniens*. The majority stated that:

"An 'estimate of the inconveniences' which would result to the corporation from a trial away from its home or principal place of business is a factor relevant to the fairness and substantial justice of requiring the corporation to stand trial in the state where the action was brought."

The concurring opinion of Justice Hallows rejects the apparent intermixing of the issue of jurisdiction and the issue of *forum non conveniens*.

A recent case presenting the same confusion over what the court actually held —jurisdiction alone or jurisdiction in light of the propriety of the venue is Fisher Governor Co. v. Superior Court, 53 Cal.2d 222, 1 Cal.Rptr. 1, 347 P.2d 1 (1959). For a discussion of the uncertainty thus presented by Fisher see Note, 1960 Wis.Law Rev. 549.

Comparison should also be made with Mitchell v. Airline Reservations, Inc., 265 Wis. 313, 61 N.W.2d 496 (1953), wherein the defendant corporation was a non-resident having no property or offices in Wisconsin, nor authorized agents for service. Mitchell only sold defendant's tickets. Plaintiff had no authority to bind defendant, except as to ticket sales. The treasurer of defendant came to Wisconsin to straighten out certain shortages in the remission of money by Mitchell to defendant. While in Wisconsin, the treasurer was served with the summons and complaint for an action of conspiracy by defendant and others against plaintiff to breach the terms of a contract with plaintiff.

The court held that there was no jurisdiction. It said that "casual presence of the corporate agent or even his conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to suit on causes of action unconnected with the activities there."

The impression one has from reading Mitchell is that service of a summons on defendant corporation for a cause of action arising out of the matters for which it was in Wisconsin, by its officer, would be valid. This is part of the basis for finding jurisdiction over AGT as respects the four Wisconsin plaintiffs in the present case. However, the four non-resident plaintiffs' causes of action are apparently unconnected with Wisconsin and unconnected with AGT's activities undertaken in Wisconsin.

The complaint on file does not explicitly indicate where or when the contracts were executed, or where or when the alleged misrepresentations were made. Th interrogatories do indicate that AGT, by its officers and representatives, did meet with the non-resident plaintiffs in their respective states. Suffice-it-to-say, nothing is on record to indicate that the non-resident plaintiffs, and AGT, had any business dealings in Wisconsin.

Defendant has also made a motion for a change of venue based on inconvenience of the forum. It is interesting to note that the defendant, according to its brief, appears to be willing to defend the claims in *five* different states. Normally this is of some benefit for a plaintiff to be able to sue not only at home, but also the place where the alleged injuries occurred.

One cannot read Lau, referring to the "estimate of inconvenience" without considering some further thoughts enunciated by that court, which were:

"Valid service of process plus existence of minimal contacts initially satisfy the requirements of due

process in maintaining the action in a Wisconsin court. Jurisdiction by Wisconsin has then been acquired. Subsequently the question of whether the previously acquired jurisdiction should be retained is to be resolved in a consideration of *forum non conveniens.*"

These two references to Lau appear to be the genesis of Justice Hallows concurring opinion, wherein he maintains that the question of properly acquired jurisdiction and the question of the proper forum are separate questions, with the venue issue arising only after there is valid jurisdiction.

■ Viewing all of the facts at hand, this court holds that where a non-resident plaintiff sues a non-resident corporation for injuries allegedly caused and sustained outside of Wisconsin, and where the plaintiff and defendant in respect to each other have had no contacts with Wisconsin, jurisdiction to render an *in personam* judgment by a Wisconsin court is lacking. As such, the District Court, in a diversity case, removed to the Federal court, also lacks jurisdiction.

## JOINDER OF CLAIMS

■ The question of joinder is one of procedure. It is controlled by the Federal Rules. Doyle v. Stanolind Oil and Gas Co., 123 F.2d 900 (5th Cir. 1941).

Rule 20, Federal Rules of Civil Procedure provides, in part, as follows:

"(a) Permissive Joinder. All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action. * * *"

This part of the opinion will proceed on the basis that there are only four plaintiffs, all residents of the same state. However, the court believes that even if the four non-residents plaintiffs were still properly in the case, the following discussion of joinder would apply equally to them.

In Gerard et al. v. Mercer et al., 62 F.Supp. 28 (D.C.Mont.1945), the court held that joinder is governed by Rule 20 in a federal court. To permit a joinder of this nature, the subject matter of complaint must relate to the same transaction and the questions raised must be common to all plaintiffs and all defendants as provided by the rule.

Gerard was a quiet title action. Title was asserted by the complainants to 10 different tracts of land. The court stated that questions will necessarily arise as to the validity of the different fee patents issued and also with respect to various transactions and conveyances affecting the title to the land. Further, the complaint did not allege any information concerning the parties defendant and their relation to the particular tracts of land involved. "How it would be possible for the defendants to answer such allegations is not all clear." Gerard, supra.

In Rohlfing v. Cat's Paw Rubber Co., (N.D.Ill.E.D.1951), 99 F.Supp. 886, the court stated:

"It is clear that the injury to each plaintiff must be premised on the individual facts arising between the plaintiff and the defendant, that this injury to the plaintiff could arise solely from circumstances of this relationship with the defendants. * * * such right to relief must arise from the same transaction or series of transactions in which all the joined parties were engaged with the defendants."

■ In the case at bar, it is difficult to see how the solicitation and execution of the 4 distributor-dealer contracts can fairly constitute claims " * * * arising out of the same transaction, occurrence, or series of transactions or occurrences * * *." Rule 20.

Federal Housing Administrator v. Christianson, 26 F.Supp. 419 (D.C.Conn. 1939) is in point. In that case, plaintiff

alleged in count one an action against three defendants on a promissory note; and in the second count, there was alleged a cause of action against two of the defendants on another promissory note. The payees of the notes and the face amount of the notes were different. One of the notes was dated at Bridgeport; the other note, bearing the same date, was dated at Boston.

The court held that there was no common question of fact involved. Each note necessarily involved separate questions of fact. The court further held that there was no common question of law involved. Under the first count the only questions of law relate to the liability of the three defendants upon the first note. Under the second count the only questions of law relate to the liability of the two defendants upon the second note. "Whether the same general principles of law are applicable is no part of the prescribed test. To rule otherwise would in effect permit a creditor, such as a bank, to bring a single action against all debtors whose obligations arose out of promissory notes, upon the theory that a common question of law was involved."

The court in Christianson severed the actions.

Plaintiff relies in part on Lansburgh & Bro., Inc. v. Clark, 75 U.S.App.D.C. 339, 127 F.2d 331 (1942), as demonstrating the great liberality permitted under the joinder rules. Clark is not in point. In Clark a wife sued for injuries sustained to her person. Her husband sued (jointly) alleging loss of services and the expenditure of money for his wife's medical expenses. Clark was not an automobile accident case as suggested by plaintiffs. Plaintiffs cite the following from Clark: "It is sufficient for joinder of plaintiffs that *the defendant's acts were factually similar, occurred at about the same time and resulted in similar injuries to the plaintiffs*". Careful and repeated reading of that case fails to reveal where in the opinion that cited sentence appears.

The court in Clark held that the two actions were separate and distinct. It never seemed to question the propriety of the joinder.

However, for the purpose of illustration only, this court will apply the sentence quoted by the plaintiffs to the facts in this case. In Clark one event, an alleged negligent act caused injuries and damages to two persons. The husband and wife's injuries are different, but they were generated from a common source—a single event. In the case at bar, the solicitation, negotiation, and execution of one distributor-dealer contract was not related to the solicitation, negotiation, and execution of any of the other distributor-dealer contracts. There just is no common source or single event which produced the damages alleged by the 4 remaining plaintiffs in this action.

Each alleged fraud and misrepresentation by AGT evolved out its own peculiar circumstances with 4 different plaintiffs.

In Akely v. Kinnicutt, 238 N.Y. 466, 144 N.E. 682 (1924), there were 193 plaintiffs suing defendant, alleging the fraudulent issuance of a prospectus, whereby the investors were induced to purchase shares of stock. The court held that the common question of whether the prospectus was fraudulent was enough to permit joinder. This was so, even though there were separate questions regarding the various plaintiffs as to whether they saw and relied on the prospectus.

It should be noted that in applying the Akely case to the one at bar, there is an important and controlling factual difference. In Akely the issuance of the prospectus was the genesis of the 193 claims. One event is the foundation for the causes of action. In the instant case, there was no one event or series of events related to each other which is the foundation of the 8 claims asserted in this action. There is no interrelated series of events or transactions producing the 8 claims.

For example, assume 4 automobiles, A, B, C, and D. A and B collide, causing B to strike C, which in turn strikes D, parked at a curb. Here is a series of

events which will produce multiple claims. However, all possible claims will have stemmed from a common transaction or event, namely the collision of A and B. Further, assume A was at fault in the example; and further assume that 10 minutes earlier on the same highway, A negligently caused a collision involving E. Could it fairly be said that the claims of B, C and D have any common question of law or fact with E's claim against A? There are separate series of events or transactions. This brief example should illustrate the posture of the case at bar.

The proper disposition therefore should be a severance of the 4 causes of action.

### MORE DEFINITE COMPLAINT AND CAPACITY TO SUE

The defendant further moves that the complaint of the plaintiffs be made more definite and that the causes of action, if any, be stated in separate counts.

The complaint does not disclose expressly where each dealer-distributor contract was entered into, nor where any of the alleged misrepresentations occurred. The complaint contains only one count, which contains the 8 alleged causes of actions.

Rule 10(b), Federal Rules of Civil Procedure, provides that:

> "Each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth."

From the summons and complaint, the capacity of Sun-X Glass Tinting Company of Milwaukee, Wisconsin, to sue does not appear. Rule 17, Federal Rules of Civil Procedure, sets forth the requirements for capacity to sue.

Rule 9(b), Federal Rules of Civil Procedure, requires that averments of fraud be stated with particularity. In this respect, the plaintiffs have not alleged explicitly where or when the alleged misrepresentations by defendant took place.

The disposition of the case, upon the motions presented is as follows.

1. The motions to quash the service of the summons and complaint on defendant AGT is denied as to the Wisconsin plaintiffs and granted as to the non-resident plaintiffs, without prejudice.

2. The causes of action will be severed.

3. The Wisconsin plaintiff will allege its capacity to sue in conformity with the Federal Rules of Civil Procedure.

4. The complaints will with particularity state where and when the alleged fraudulent misrepresentations occurred.

5. The plaintiffs will have 30 days from the date of this Order to serve their complaints upon the defendants, amended in conformity to paragraphs three and four of the disposition of this case.

It is so ordered.